IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **ENZO BIBOLOTTI** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AMERICAN HOME MORTGAGE** | § | |
| **SERVICING INC.,** | § | |
| | § | |
| **DEUTSCHE BANK NATIONAL TRUST** | § | **CAUSE NO. 4:11-CV-00472** |
| **COMPANY, AS TRUSTEE FOR** | § | |
| **SOUNDVIEW HOME LOAN TRUST** | § | |
| **2006-OPT 2, ASSET-BACKED** | § | |
| **CERTIFICATES, SERIES 2006-OPT2** | § | |
| | § | |
| **G. MOSS & ASSOCIATES, L.L.P. and** | § | |
| | § | |
| **MARINOSCI LAW GROUP, P.A.** | § | |
| | § | |
| **Defendants.** | § | |

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

COMES NOW Enzo Bibolotti, plaintiff in the above-captioned matter, through counsel, and submits this Brief in Support of Plaintiff's Motion for Attorney's Fees and Litigation Expenses, and in support hereof would respectfully show the Court:

I.
INTRODUCTION

Plaintiff seeks to recover his attorneys' fees and litigation expenses as detailed herein following approximately twenty-two months of contentious litigation culminating in this Court's memorandum opinion and order granting Plaintiff's motion for partial summary judgment as to liability on Plaintiff's claims against Defendants American Home Mortgage Servicing Inc. ("AHMSI") and Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan

Trust 2006-OPT 2 Asset-Backed Certificates, Series 2006-OPT2 ("Deutsche") (collectively, "Defendants").  Plaintiff's hard-won success in this matter serves the crucial public interest in protecting the discharge injunction that is essential to the functioning of our nation's bankruptcy laws.  As outlined in Plaintiff's Brief in Support of Sanctions filed concurrently herewith, courts routinely award debtors' attorneys' fees and litigation expenses for contempt proceedings in which there is a finding that the defendant willfully violated the bankruptcy discharge injunction.

Accordingly, Plaintiff now seeks attorneys' fees in the amount of $240,025.00 and reimbursement of litigation expenses in the amount of $18,485.91.  In support of these amounts, Plaintiff submits the Declaration of lead counsel, Theodore Bartholow, which is attached hereto as <u>Appendix 1</u>.  Attorney Bartholow's Declaration ("Bartholow Declaration") includes: (1) curriculum vitae for Mr. Bartholow, Ms. Kellett, and Ms. Wells; (2) detailed hourly billing reports compiled from the contemporaneous time records for each attorney who worked on this case; (3) the "United States Consumer Law Attorney Fee Survey Report 2010-2011 Top 10 Cities 2nd Edition" by Ronald L. Bridge; (4) a detailed accounting of all unreimbursed litigation expenses advanced by Plaintiff's counsel.

Based on applicable authority as detailed herein as well as the attached declaration and exhibits thereto, Plaintiff respectfully requests that the Court award the full amount of the requested attorneys' fees and litigation expenses.

II.
<u>CASE OVERVIEW</u>

Plaintiff filed the above-captioned lawsuit (originally in state court) to remedy Defendants' refusal to cease (a) improper credit reporting regarding and (b) written and telephonic communications seeking to recover on Plaintiff's discharged mortgage loan related to a property Plaintiff had vacated and surrendered to Defendants in his chapter 7 bankruptcy.

Defendants elected to defend this case vigorously because, as the summary judgment evidence demonstrates, Defendants' conduct with regard to Plaintiff is consistent with their internal policies and procedures.   Therefore Defendants' conduct is being repeated with regard to every similarly-situated borrower nationwide, potentially exposing Defendants to substantial liability in other cases.   Nevertheless, Plaintiff has, throughout the case, sought to resolve this matter with Defendants instead of taking the matter to this stage.   Accordingly, although the legal fees and expenses associated with this case are substantial, they have reached this level only because of Defendants' election to embrace a "stalwart defense" litigation strategy.   As the Fifth Circuit has noted:

> [A]lthough defendants are not required to yield an inch or pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.

*McGowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir. 1981).

Thus, after fighting vigorously at every turn and ultimately losing on the merits, Defendants must now bear cost of their stalwart defense.

III.
ARGUMENT

For the reasons set forth in Plaintiff's Brief in Support of Sanctions for Defendants' Violation of the Discharge Injunction, it is both necessary and appropriate to include Plaintiff's attorneys' fees and expenses as set forth herein in the sanctions awarded against Defendants.

A.      **Reasonable Fees are Determined by the Lodestar.**

In the Fifth Circuit, assessment of the amount of reasonable attorneys' fees is determined using the "lodestar" approach.   *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575 (5th Cir. 1980); *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999).   The lodestar amount "is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the

community for similar work." *In re Pilgrim's Pride Corp.,* 690 F.3d 650, 655 (5th Cir. 2012), as

revised (Aug. 14, 2012).  The lodestar is strongly presumed to yield a reasonable fee, and the

lodestar is the appropriate method of determining attorneys' fees in discharge violation cases

because the shifting of fees serves the public policy of encouraging private enforcement of the

critical fresh start purpose of the bankruptcy discharge.  *Id.* at 655, 662.

In addition to the lodestar, courts in the Fifth Circuit must apply the factors articulated in

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which adjusted the

lodestar based on twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the
> legal issues; (3) the skill required to perform the legal service
> properly; (4) the preclusion of other employment by the attorney as
> a result of taking the case; (5) the customary fee for similar work
> in the community; (6) whether the fee is fixed or contingent; (7)
> time limitations imposed by the client or other circumstances; (8)
> the monetary amount involved and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) whether
> the case is undesirable; (11) the nature and duration of the
> professional relationship with the client; and (12) awards in similar
> cases.

*Id*.  After determining the lodestar amount, the district court may use a multiplier to adjust the

lodestar up or down based on relevant *Johnson* factors not already included in the lodestar.

Importantly, however, the *Johnson* factors do not solely govern whether a multiplier should be

applied to the lodestar calculation.  Rather, courts in the Fifth Circuit employ the *Johnson* factors

to evaluate "the determination of reasonableness itself."  *Abrams v. Baylor College of Medicine*,

805 F.2d 528, 536 (5th Cir. 1986).  The *Johnson* factors for (a) novelty and complexity of the

issues, (b) skill required, (c) quality of representation, and (d) results obtained are presumptively

already reflected in the lodestar amount.  *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir.

1990).  Additionally, although the *Johnson* factors must be addressed to ensure that the resulting

fee is reasonable, not every factor need be considered. *Batchelder v. Kerr-McGee Corp*., 246 F. Supp. 2d 525, 531 (N.D. Miss. 2003).

When determining which hours were "reasonably" expended on the litigation, the district court is required to determine reasonable hourly rates for the billing attorneys or paralegals and scrutinize the billing records carefully to exclude excessive, duplicative, or otherwise unnecessary entries. *Id*. The reasonable hourly rate is determined with reference to the prevailing market rate in the relevant legal community for similar work. *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990). The Court may also use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Davis v. Board of School Commissioners of Mobile County*, 526 F.2d 865, 868 (5th Cir. 1976).

### B.   Plaintiff's Lodestar Fee Calculation

   1.   <u>Hours Expended and Hourly Rates:</u>

Plaintiff seeks $240,025 in fees for 1,034.9 hours expended. The hours expended for which Plaintiff seeks compensation are divided as follows:

<u>Theodore Bartholow:</u>

$275/hr. (1/1/11-12/31/11) (<u>59.8 hours</u>) (Total: <u>$16,445.00</u>) (Reduced amount: <u>$13,007.00</u>)

$325/hr (1/1/12-12/31/12) (<u>335.6 hours</u>) (Total: <u>$109,070.00</u>) (Reduced amount: <u>$86,985.00</u>)

$350/hr (1/1/13-present) (<u>180.7 hours</u>) (Total: <u>$63,245.00</u>) (Reduced amount: <u>$46,725.00</u>)

<u>Caitlyn Wells:</u>

$175/hr. (1/1/11-7/31/12) (<u>93.4 hours</u>) (Total: <u>$16,345.00</u>) (Reduced amount: <u>$11,092.50</u>)

$225/hr. (8/1/12-present) (<u>288.7 hours</u>) (Total: <u>$64,957.50</u>) (Reduced amount: <u>$56,700.00</u>)

<u>Karen Kellett:</u>

$450/hr. (1/1/11-12/31/12) (<u>44.3 hours</u>) (Total: <u>$19,935.00</u>) (Reduced amount: <u>$9,765.00</u>)

$500/hr. (1/1/13-present) (<u>32.4 hours</u>) (Total: <u>$16,200.00</u>) (Reduced amount: <u>$15,750.00</u>)

TOTAL HOURS: <u>1,034.9</u>

TOTAL LODESTAR: <u>$306,197.50</u>

TOTAL AS REDUCED: <u>$240,025.00</u>

*See* Bartholow Declaration at <u>Exhibit</u> <u>B</u>.

**C.     Counsel's time and labor was reasonably necessary to obtain the contempt finding at summary judgment.**

1.     <u>The amount of time expended by Plaintiff's counsel was reasonable in light of Defendants' stalwart defense litigation strategy.</u>

From the outset, this case has been hotly contested, as described in detail in Attorney Bartholow's declaration.  Defendants sought an extension of time to answer the Plaintiff's original state court petition, then removed the matter to this Court.  From there, Defendants proceeded to file two motions to dismiss, to which Plaintiff responded fully each time. Defendants' first motion to dismiss was denied as moot, and the second motion was denied in its entirety.  Defendants served and Plaintiff responded to two rounds of onerous, document-intensive discovery requests.  Plaintiff served discovery requests to Defendants that were, at first, met with near-ubiquitous blanket objections, followed by a trickle of information, followed two months later by Plaintiff's motion to compel that was granted in part (and largely mooted by Defendants' amended discovery responses and additional production after the filing of the motion to compel), followed by more document production by Defendants on the eve of summary judgment and capped-off by third amended discovery responses by Defendants after the filing of the motions for summary judgment in this case.  The parties prepared for and attended unsuccessful court-ordered mediation.  Plaintiff's counsel took four depositions, the three remaining Defendants' corporate representatives and Defendants' credit damages expert,

and Plaintiff's counsel defended Plaintiff's deposition and dealt with Defendants' unfulfilled threat to take the deposition of Plaintiff's ex wife.  Plaintiff attempted to obtain follow-up information about other potential witnesses and to obtain competent testimony from Deutsche based on the obvious incompetence of the AHMSI representative put up by Deutsche for its 30(b)(6) deposition.  The parties filed extensive cross-motions for summary judgment, cross-motions to strike their respective summary judgment affidavits, and responses and replies to each, most of which exceeded the Court's briefing page limits.

    2.    <u>In the exercise of appropriate billing judgment, Plaintiff's counsel has substantially reduced the number of hours for which Plaintiff seeks compensation.</u>

Fee applicants must exercise billing judgment in seeking reimbursement of attorneys' fees to be awarded by the Court.  *Saizan v. Delta Concrete Prods. Co. Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).  In exercising such judgment, Plaintiff's counsel has documented hours charged and not charged because they were unproductive, excessive, or redundant.  *Id*. at 799.  In connection with this process, Plaintiff's counsel has meticulously reviewed and edited their time records to, in some cases, completely remove unnecessary charges, and in other cases, to reduce the amount of time sought to be recovered.  The Plaintiff's final fee request is approximately 78.4% of the total time billed to the account, reflecting Plaintiff's counsel's proper exercise of billing judgment in this matter.

**D.    Plaintiff's Counsel's Hourly Rates are Reasonable**

The three attorneys who worked on this case, partners Theodore Bartholow and Karen Kellett and associate attorney Caitlyn Wells (fka Caitlyn Smith) seek hourly rates ranging from $175 for Ms. Wells' work through July 31, 2012, to $500 for Ms. Kellett's work on the case. Mr. Bartholow's rate increased from $275 in 2011 to $325 in 2012 and to $350 in 2013 to bring his rates from well-below-average to closer to average (albeit still slightly below-average) for

attorneys of similar experience, skill and reputation in the area of bankruptcy and consumer litigation.  Ms. Kellett is an extremely experienced, AV-Rated attorney with over 20 years' experience in bankruptcy and consumer litigation.  She has successfully certified several national class action cases involving consumer bankruptcy issues and has spent her career representing consumer and business bankruptcy debtors, as well as consumer plaintiffs and corporate defendants in consumer litigation matters.  Ms. Kellett's hourly rate of $450-500 charged in this case is below average for attorneys of comparable skill, reputation and experience.

     1.     <u>Novelty and Difficulty of Issues</u>:

Although, on a surface level, the issues in this case related to the discharge injunction are not particularly novel, Defendants' efforts to confuse them by asserting novel arguments and (mis)interpretations of applicable provisions of the Bankruptcy Code caused the case to become exceedingly difficult and "novel" to the extent Plaintiffs were forced to address Defendants' unique arguments about the applicability of Bankruptcy Code § 524(j) and the meaning of "personal residence" as applied thereto.  Moreover, mortgage servicing-related litigation demands extensive knowledge of the inner workings of the mortgage servicing industry's policies, procedures, and computer systems.  In addition, the credit-reporting related issues required extensive learning about the way the credit scoring models operate and how they can be impacted by the kind of false and/or inaccurate information to which Plaintiff's credit reports were subjected.

     2.     <u>Skill Required</u>:

Defense counsel in this case are among the most skilled and experienced in the industry with regard to mortgage servicing litigation, and therefore, the successful prosecution of this case required that Plaintiff's counsel be up to the task in order to prevail.  Moreover, knock-down,

drag-out discovery disputes are typical of litigation with mortgage servicers, and in particular it is Plaintiff's counsel's experience that contested motions to compel, surprise last-minute witnesses (Cindy Ellis), and late disclosures of material evidence (credit reporting records, call logs) are virtually part-and-parcel of litigation with mortgage servicer defendants.  Navigating these challenges requires skill and experience acquired over years of practice in these kinds of cases.  Indeed, this Court's active mortgage litigation docket reflects early, summary dismissals of case after case involving mortgage servicing issues, including many defended by defense counsel in this case.  That Plaintiff's counsel was able to persevere and ultimately succeed in this case in the face of the substantial financial, legal, and technical challenges presented by this litigation is testament to the fact that Plaintiff's counsel possesses the necessary and substantial skill required for this litigation.  Plaintiff's fees in this case are therefore appropriate.

3.      <u>Preclusion of Other Employment</u>:

The time required for the prosecution of this case has, to a substantial degree, precluded other employment.  Plaintiff's counsel has been approached by several other potential clients with objectively viable factually-similar cases, but given the uncertainty of the outcome of this case given Defendants' stalwart defense strategy, Plaintiff's counsel has been forced to decline representation in many of these cases.  This factor, especially combined with the results obtained, favors upwards adjustment of the lodestar.

4.      <u>Whether Fee is Fixed or Contingent</u>:

Plaintiff has agreed to pay his counsel on an hourly basis.  However, in practical terms, Plaintiff's counsel's fees are effectively contingent on the Court's award of such fees being paid by Defendants, given that Plaintiff is a former bankruptcy debtor who likely would be unable to pay counsel's substantial fees if required to do so.  Thus, Plaintiff's counsel could not reasonably have anticipated being able to recover fees from Plaintiff in the event the outcome of this case

was unfavorable.  In the event the Court awards Plaintiff punitive sanctions in a multiple of the actual damages, including Plaintiff's attorneys' fees and litigation expenses, Plaintiff's attorneys will receive no additional compensation beyond the attorneys' fees and expenses awarded by the Court.  Accordingly, this factor favors adjusting the lodestar upwards.

     5.     <u>Time Limitations Imposed by the Client or Circumstances</u>:

This factor is not particularly relevant in this case.

     6.     <u>Amount Involved and Results Obtained</u>:

This case was far more about the big-picture principle (protecting the integrity of the bankruptcy discharge) than Plaintiff's out-of-pocket dollars-and-cents loss.  Thus, because Plaintiff's counsel's recovery of any attorneys' fees was ultimately dependent on vindicating the important substantive right represented by the Plaintiff's bankruptcy discharge, the importance of the result justifies the amount involved.  Consequently, counsel undertook this case as a high risk proposition with only an expectation of obtaining a fair reward for counsel's services.  Thus, this factor favors adjustment upward because it was extremely difficult to obtain the results in this case despite a relatively small amount of pecuniary loss involved at the outset, notwithstanding the emotional distress suffered by Plaintiff and any punitive damage award the Court may deem appropriate.

     7.     <u>Experience, Reputation and Ability of the Attorneys</u>:

This factor has already been discussed in detail above.  See also the attached affidavit and CV of Mr. Bartholow.  Attorneys are experienced, able attorneys having a good reputation in the community especially for their litigation work on consumer and bankruptcy cases such as this one.

     8.     <u>Undesirability of the Case</u>: –

The risk of not being compensated makes this case somewhat undesirable.

9.      <u>Nature and Length of the Professional Relationship with the Client</u>:

This factor is not relevant in this case.

10.      <u>Awards in Similar Cases</u>:

The hourly rates sought by Plaintiff's counsel herein are consistent with rates deemed reasonable in cases involving similar issues and outcomes.  *See, e.g. Haberman v. PNC Mortgage Co.*, __ F. Supp.2d __, 2013 WL 55504 (E.D. Tex. Jan. 3, 2013).

**E.  The amount of recovery by the Plaintiff for actual damages, including pecuniary loss and emotional distress / mental anguish is irrelevant to the amount of attorneys' fees required to vindicate Plaintiff's right to be protected from Defendants' willful violation of the discharge injunction.**

As discussed in Plaintiff's Brief in Support of Sanctions, it is crucial that Defendants not be permitted to use obstreperous, costly litigation tactics as a sword to destroy the benefit of the bankruptcy discharge injunction.  To do so would effectively destroy the discharge, at least with regard to institutional creditors with the resources to crush individual debtors' efforts to enforce the discharge.  Although one of the *Johnson* factors is the "amount involved and results obtained," this factor does not mean that attorneys' fees and the plaintiff's results need to be proportionate.  *See, e.g. Haberman*, 2013 WL 55504; *Prater v. Commerce Equities Management Co., Inc.*, 2008 WL 5140045 (S.D. Tex. Dec. 8, 2008)(*citing Andrews v. United States*, 122 F.3d 1367, 1376 (11th Cir. 1997); *City of Riverside v. Rivera*, 477 U.S. 561, 564-5 (1986)(no proportionality necessary between damages and fee award in fee-shifting case; finding that $245,456.25 fee award was appropriate despite total damages of just $33,350).  Also, where, as here, the Plaintiff has obtained excellent results, the fact that Plaintiff did not prevail on every cause of action raised in the lawsuit does not require reduction in the fee award.  *Hensley*, 461 U.S. at 435.  *See also, Haberman*, 2013 WL 55504.  Indeed, a requirement that the amount of attorneys' fees be proportional to the amount of damages would undermine the purpose of the

discharge injunction, just as is the case with many fee-shifting consumer statutes "designed to afford private parties the opportunity to vindicate rights that serve some broad public good." *Spooner v. EEN, Inc.*, 664 F.3d 62, 68 (1st Cir. 2011).  Thus, regardless of whether the Court awards a substantial multiple of Plaintiff's attorneys' fees and other actual damages as a punitive sanction, or elects to award some lesser amount, based on the agreement of Plaintiff's counsel with Plaintiff and the overall purpose of the discharge injunction, the financial consequence to the Plaintiff in this successful litigation should be, at a minimum, not having to pay to have his rights under the Bankruptcy Code vindicated.  Anything less would be tantamount to victory for the Defendants.

IV.
## CONCLUSION

Plaintiff's attorneys' fees requested herein, as calculated using the lodestar approach, are reasonable and necessary in light of the *Johnson* factors and should therefore be awarded in the amount of $240,025.00 in fees and $18,485.91 in litigation expenses, in the total amount of $258,510.91.

Respectfully submitted,

ARMSTRONG KELLETT BARTHOLOW P.C.

*/s/ Theodore O. Bartholow, III ("Thad")*
Theodore O. Bartholow, III ('Thad")
11300 N. Central Expy. Suite 301
Dallas, Texas 75243
Tel. 214.696.9000 Fax 214.696.9001
Email: thad@akbpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2013 a true and correct copy of the foregoing was served on the parties listed below via ECF or first class mail.

*/s/ Theodore O. Bartholow, III*
Theodore O. Bartholow, III

Robert T. Mowrey
Arthur E. Anthony
Alexa R. Golliher
Locke Lord Bissell & Liddell LLP
2200 Ross Ave.
Suite 2200
Dallas, TX 75201
*Attorneys for Defendants American*
*Home Mortgage Servicing, Inc.,*
*Deutsche Bank National Trust Co., and*
*G. Moss & Associates, L.L.P.*