**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **ENZO BIBOLOTTI** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AMERICAN HOME MORTGAGE** | § | |
| **SERVICING INC.,** | § | |
| | § | |
| **DEUTSCHE BANK NATIONAL TRUST** | § | **CAUSE NO. 4:11-CV-00472** |
| **COMPANY, AS TRUSTEE FOR** | § | |
| **SOUNDVIEW HOME LOAN TRUST** | § | |
| **2006-OPT 2, ASSET-BACKED** | § | |
| **CERTIFICATES, SERIES 2006-OPT2** | § | |
| | § | |
| **G. MOSS & ASSOCIATES, L.L.P. and** | § | |
| | § | |
| **MARINOSCI LAW GROUP, P.A.** | § | |
| | § | |
| **Defendants.** | § | |

**THEODORE O. BARTHOLOW, III'S DECLARATION IN SUPPORT OF AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| DALLAS COUNTY | § |

BEFORE ME, the undersigned authority, personally appeared THEODORE O. BARTHOLOW, III, and under oath stated the following:

1.     My name is Theodore O. Bartholow, III.  I am an attorney in good standing with the State Bar of Texas and a shareholder of Armstrong Kellett Bartholow, P.C.  I am over 21 years of age and suffer no legal disability.  I am competent to make this declaration.  The facts in this declaration are based on my personal knowledge and, if called as a witness, I could and would testify to them.

2.      Armstrong Kellett Bartholow, P.C. ("Plaintiff's Counsel") is lead counsel of record for Plaintiff in the above-captioned suit.  Plaintiff's Counsel has been at risk of not receiving any compensation for prosecuting Plaintiff's claim against Defendants.  While Plaintiff's Counsel has devoted significant time and resources to this matter, it has foregone other legal work for which it would have been compensated.

3.      Plaintiff's Counsel is devoted to litigating claims on behalf of consumers, particularly with respect to violations of the bankruptcy discharge and other bankruptcy related issues. Plaintiff's Counsel are experienced bankruptcy litigation attorneys that collectively have approximately 50 years of experience representing consumers in litigation related to violations of the United States Bankruptcy Code.

4.      Both I and Karen Kellett are admitted to practice before the Northern, Eastern and Southern District of Texas Bankruptcy Courts.  Our associate, Caitlyn Wells, is admitted to practice before the Northern and Easter District of Texas Bankruptcy Courts.  Further, Plaintiff's Counsel have achieved important results in both individual and class consumer actions in both state and federal court in Texas.

5.      Additionally, both I and Karen Kellett regularly speak at local, regional and national bankruptcy conferences on topics related to bankruptcy litigation.  Detailed curriculum vitaes for each attorney are attached hereto as Exhibit A.

6.      Plaintiff's Counsel has performed a substantial amount of work in connection with the prosecution of Plaintiff's claims against Defendants American Home Mortgage Servicing, Inc. ("AHMSI") and Deutsche Bank National Trust Company ("Deutsche").

7.      An overview of this litigation is as follows:

        a.      This suit arose out of Defendants' deliberate and repeated violations of the

discharge injunction.  Plaintiff filed for Chapter 7 bankruptcy on August 12, 2010 and plainly indicated his intent to surrender his former homestead in Florida.  Defendants were aware of Plaintiff's bankruptcy, and even participated in Plaintiff's bankruptcy case by filing a motion for relief from stay with respect to the property.  Plaintiff received his discharge on November 21, 2010, and almost immediately began receiving correspondence from Defendants regarding his discharged mortgage loan.

b.      Instead of proceeding with foreclosure, Defendants continually bombarded Plaintiff with correspondence regarding payment changes and loss mitigation opportunities, and erroneously reported Plaintiff's discharged mortgage loan to the major credit bureaus as increasingly delinquent and in foreclosure.  Plaintiff was distressed by Defendants' continued attempts to collect on his discharged mortgage loan, and he attempted to dispute the inaccurate credit reporting himself prior to filing suit.  After Plaintiff's disputes were unsuccessful in resolving the issue, he was forced to file suit.

c.      Plaintiff originally filed suit in the 158th Judicial District Court of Denton County Texas on June 23, 2011.  Defendants' counsel requested a ten-day extension of time to answer or respond to Plaintiff's petition, which Plaintiff's counsel granted.  Defendants removed the case to federal court on July 29, 2011.  In response to Defendants' removal, Plaintiff's counsel was required to re-plead and file an amended complaint that conforms to federal pleading standards. Plaintiff filed an amended complaint on September 1, 2011.  Shortly thereafter, on September 20, 2011, Defendants filed their motion to dismiss, which was erroneously linked to Plaintiff's original complaint instead of Plaintiff's amended complaint.  Plaintiff's counsel, unaware of the error, prepared and filed an extensive, twenty-one page brief in response to Defendants' motion to dismiss on November 9, 2011.  On November 21, 2011, the Court denied Defendants' motion

to dismiss as moot due to the fact that Plaintiff had filed an amended complaint.

      d.      On December 2, 2011, Defendants filed a modified motion to dismiss Plaintiff's amended complaint correcting several defects in form and addressing some of Plaintiff's arguments in response to the original motion to dismiss.   Plaintiff filed a twenty-six page response to the second motion to dismiss on December 19, 2011.   On February 27, 2012, the Court entered an order denying Defendants' motion to dismiss in its entirety.   On March 12, 2012, Defendants filed their Original Answer, which included no less than eighteen affirmative defenses.

      e.      On March 9, 2012, Defendants served Plaintiff with requests for admissions, interrogatories, and requests for production.   Defendants' first set of discovery included twenty-five requests for admission, twenty-four interrogatories, and fifty requests for production. Defendants' requests for discovery were particularly burdensome due to the extremely broad nature of Defendants' production requests.     For example, Defendants requested all correspondence Plaintiff has ever received from Defendants, copies of Plaintiff's bank statements and cancelled checks as proof of payments sent to Defendants, and all documents related to any loan Plaintiff had obtained since January 1, 2006.   Plaintiff produced 1,416 pages of documents in response to Defendants' first set of discovery requests.

      f.      On August 8, 2012, Defendant Homeward served a second set of discovery requests, which included an additional four requests for admission and seventy-nine requests for production.   Defendants' second set of discovery requests were also particularly onerous because they requested "all documents" relating to each of Plaintiff's open credit accounts from January 1, 2006 until the date of the requests.   Plaintiff produced an additional 324 pages of documents in response to Defendants' second request for discovery on September 10, 2012, and served

Defendants with twenty-two pages of supplemental production on September 28, 2012.  In total, Plaintiff produced 1,762 pages of documents to Defendants.

g.      Plaintiff served Defendants with his first request for discovery on March 14, 2012.  Defendants' responses were due on April 16, 2012.  Based on this due date, the parties had arranged for depositions to take place on April 27, 2012.  The morning Defendants' discovery responses were due, Defendants' counsel requested an extension of time to respond to the requests.  Plaintiff's counsel indicated that he would agree to the extension if Defendants would agree to postpone the scheduled depositions.  Plaintiff's counsel received no response, and Defendants served their discovery responses on April 16 by mail.  Defendants' responses consisted largely of a multitude of objections and Defendants produced only 216 pages of documents.  After an extensive review of each Defendant's discovery responses and the production, Plaintiff's counsel informed Defendants' counsel that the discovery responses were unacceptable, and the parties conducted an extensive telephone conference discussing Defendants' responses.  Defendants promised they would review their responses and update them appropriately.

h.      After more than two months of waiting for amended responses, Plaintiff filed a thirty-three page motion to compel on June 28, 2012, discussing each of Defendants' objections to Plaintiff's discovery requests in detail.  On July 6, 2012, Defendants served Plaintiff with amended discovery responses and produced an additional 418 pages of documents.  Defendants filed a response to Plaintiff's motion to compel on July 23, 2012.  The parties continued their discussions regarding whether Defendants' discovery responses were adequate, but were unable to come to an agreement.  The Court ultimately held a telephonic hearing on the issue on September 5, 2012.  At the hearing on Plaintiff's motion to compel, the Court granted Plaintiff's

motion in part.   Defendants served Plaintiff with supplemental document production on December 11, 2012, but did not serve Plaintiff with their second amended discovery responses until January 4, 2013.

      i.     Together, the parties have taken a total of five depositions in this case.  On July 25, 2012, Plaintiff took two depositions of Lorraine Baggs, the corporate representative for both AHMSI and Deutsche Bank.  On July 27, 2012, Plaintiff took the deposition of Mike Sullivan, G. Moss's corporate representative.  Defendants' counsel took Plaintiff's deposition on August 21, 2012.  Finally, Plaintiff deposed Defendants' expert witness on November 28, 2012.  Each deposition required a substantial amount of preparation, including preparation of deposition exhibits, reviewing pleadings and discovery responses, and developing strategies for each deposition.  This is especially true with respect to Defendants' expert witness, an experienced expert witness who has been deposed on issues relating to credit reporting many times.

      j.     The Court ordered the parties to conduct mediation in this case as part of its scheduling order.  The parties completed an entire day of mediation on October 1, 2012, at which point the mediator decided to issue a mediator's recommendation in an attempt to resolve the case.  After extensive discussion with Plaintiff regarding the mediator's recommendation, the parties were ultimately unable to come to a mutual settlement agreement.  However, Plaintiff entered into the mediation in good-faith, and prepared an eleven-page, in-depth statement for the mediator's consideration.   Lead counsel for Plaintiff was present for the entire nine hour mediation.  Plaintiff's associate counsel was present for seven hours of the mediation, but had to attend a hearing in Fort Worth and missed approximately two hours of the mediation.

      k.     Defendants filed their motion for summary judgment on December 20, 2012.  Plaintiff filed a partial motion for summary judgment on December 23, 2012.  Both parties'

summary judgment motions were approximately thirty pages in length.   Upon review of

Defendants' summary judgment evidence, Plaintiff discovered that Defendants relied upon the

affidavit of Cindi Ellis, a previously undisclosed witness.   Ms. Ellis' affidavit directly

contradicted deposition testimony given by Lorraine Baggs, AHMSI's corporate representative,

and Plaintiff's counsel was forced to file a motion to strike the contradictory testimony.   Plaintiff

filed his motion to strike the affidavit of Cindi Ellis on January 18, 2013, simultaneously with

Plaintiff's thirty-one page response to Defendants' motion for summary judgment.   On the same

day, Defendants filed two separate responses to Plaintiff's motion for summary judgment, one

for AHMSI and Deutsche and the other for G. Moss, as well as a motion to strike Plaintiff's

summary judgment affidavit.

       l.      On February 8, 2013 Plaintiff filed replies to each of Defendants' responses to

Plaintiff's motion for summary judgment, as well as a ten-page response to Defendants' motion

to strike Plaintiff's affidavit in support of summary judgment.   Also on February 8, 2013,

Defendants filed a reply to Plaintiff's response to Defendants' motion for summary judgment, as

well as a response to Plaintiff's motion to strike the affidavit of Cindi Ellis.   Both parties filed

their respective replies to the motions to strike on February 18, 2013.

       m.     On March 29, 2013, Plaintiff also filed an unopposed motion to supplement the

summary judgment record to include new correspondence Plaintiff received regarding property

at issue from Ocwen, Defendant AHMSI/Homeward's successor-in-interest.

       n.      On May 15, 2013, the Court issued its memorandum opinion and order finding in

favor of Plaintiff with respect to his claims for violation of the discharge injunction.

8.      The specific detail of the work done by Plaintiff's Counsel is noted in the hourly billing

report attached hereto as <u>Exhibit B</u>.   Plaintiff's Counsel has devoted a total of 1,038.9 hours to

the prosecution of this case.  As reflected in the hourly billing report, Plaintiff's Counsel's current lodestar is $306,197.50 with respect to this litigation.  The hourly billing report was prepared from contemporaneous kept time records regularly prepared and maintained in the ordinary course of business by Armstrong Kellett Bartholow, P.C.

9.     Plaintiff's Counsel performed an extensive review of its contemporaneous time records to determine any hours expended over the course of litigation that were excessive, duplicative or otherwise unnecessary.  Plaintiff's Counsel has fully redacted or reduced the fees associated with such entries from its time records.  In particular, other than the mediation, I have completely eliminated any hours in which more than one of Plaintiff's Counsel were attending the same proceeding.  I have also voluntarily reduced my fees, Ms. Wells' fees and Ms. Kellett's fees by a total of approximately 21.6%, so that the total amount of fees being sought is $240,025.00.  In this regard, Plaintiff's Counsel has fulfilled its duty to exercise billing judgment as to the time sought to be reimbursed.  In addition, although a paralegal and another partner worked on this case, I have voluntarily eliminated their time from this request.

10.     My current hourly rate is $350.00 an hour.  My billing rate for January 1, 2011 – December 31, 2011 was $275.00 an hour.  My billing rate for January 1, 2012 – December 31, 2012 was $325.00 an hour.  Pursuant to the United States Consumer Attorneys Fees Survey Report for 2010-2011, I believe my hourly rate to be consistent with the average hourly rate of consumer attorneys throughout the country, and consistent with the average hourly rate of consumer attorneys in Dallas.  Attached hereto as <u>Exhibit C</u> is a true and correct copy of the 2010-2011 U.S Consumer's Attorney Fees Survey Report.

11.     Caitlyn Wells' current hourly rate is $225.00 an hour.  Her billing rate for January 1, 2011 through July 31, 2012 was $175.00 an hour.  Her current hourly rate is reasonable relative

to her experience in this type of litigation.

12.     Karen Kellett's current hourly rate is $500.00 an hour.  Her billing rate for January 1, 2011 through December 31, 2012 was $450.00.  Her current hourly rate is also reasonable relative to her experience in this type of litigation.

13.     Attached hereto as <u>Exhibit D</u> is a true and correct accounting of unreimbursed costs and expenses incurred by Plaintiff's Counsel during the course of this litigation.  Plaintiff's Counsel has advanced a necessary total of $18,485.91 in unreimbursed expenses in connection with the successful prosecution of this action.  Plaintiff's Counsel has made its usual and customary charges for expenses it paid or incurred in this litigation, and added no surcharge to any expense. The expenses incurred in this case are reflected in the books and records of Plaintiff's Counsel, which were prepared from expense vouchers, invoices, check and receipt records and other source materials and are an accurate recordation of the expenses incurred.

FURTHER, AFFIANT SAITH NOT.

_____
Theodore O. Bartholow, III

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned notary public, on this 29th day of May 2013, by Theodore O. Bartholow, III.

_____
Notary Public of the State of Texas



CAITLYN NICOLE SMITH
Notary Public, State of Texas
My Commission Expires
June 19, 2014

